**K–LATH, DIVISION OF TREE ISLAND WIRE (USA), INC., Plaintiff,**

v.

**DAVIS WIRE CORPORATION, a Delaware Corporation, also and/or formerly known as Davis Walker Corporation and Delaware Davis Wire Corporation, Jaenson Wire Company, a Nevada Corporation, also and/or formerly known as Jaenson Shepard Wire Company, Inc., Defendants.**

No. CV 98–4285 (JGx).

United States District Court,
C.D. California.

Aug. 10, 1998.

David A. Robinson, Bye, Robinson & Winsten, Irvine, CA, Kit M. Stetina, Stetina, Brunda, Garred & Brucker, Laguna Hills, CA, for Plaintiff.

Theodore A. Pianko, Craig A. Gelfound, Christie, Parker & Hale, Pasadena, CA, for Defendants.

## ORDER RE: DEFENDANTS' MOTION TO DISMISS

COLLINS, District Judge.

Defendants' motion to dismiss came on regularly for hearing before this Court on August 10, 1998. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Defendants' motion is GRANTED.

### I. Background

#### A. Procedural Background

On May 29, 1998, Plaintiff, K–LATH, DIVISION OF TREE ISLAND WIRE (USA), INC. ("K–Lath") filed a complaint against Defendants DAVIS WIRE CORPORATION,

also and/or formerly known as DAVIS WALKER CORPORATION and DELAWARE DAVIS WIRE CORPORATION ("Davis"), and JAENSON WIRE COMPANY also and/or formerly known as JAENSON SHEPARD WIRE COMPANY, INC. ("Jaenson") (collectively, "Defendants"), alleging causes of action for (1) declaratory judgment of patent invalidity and non-infringement; (2) violation of section 2 of the Sherman Act, 15 U.S.C. § 2; (3) interference with existing and prospective advantage; and (4) unfair competition, Cal.Bus. & Prof.Code § 17200, et seq. On July 13, 1998, Defendants filed the instant motion to dismiss Plaintiff's first cause of action for declaratory judgment pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and to dismiss Plaintiff's second through fourth causes of action pursuant to Rule 12(b)(6) ("Motion"). Plaintiff filed an opposition on July 27, 1998 ("Opposition"). On August 3, 1998, Defendants filed their reply ("Reply").

## B. Factual Allegations

### 1. Complaint's Factual Allegations

Plaintiff's Complaint alleges, in pertinent part, the following:

K–Lath has manufactured, distributed, and sold paper-backed wire lath in the domestic construction market since 1948. Davis and Jaenson are two of K–Lath's chief competitors and leading suppliers of paper-backed wire lath products. In May, 1996, Davis purchased substantially all of Jaenson's assets, including Jaenson's right under United States Letters Patent No. 5,540,023 ("023 patent").[1] Davis has a financial interest in Jaenson's business and controls the day-to-day operations of Jaenson, such that no separateness exists between Davis and Jaenson. Davis/Jaenson controls approximately 60% or more of the relevant market supply for paper-backed wire lath.

Plaintiff alleges that the '023 patent is invalid for several reasons, the following of which are most relevant to the instant motion:

- The named inventors and applicant willfully, recklessly or negligently failed to disclose to the United States Patent and Trademark Office ("PTO") pertinent prior art known to be in existence more than one year prior to filing the '023 patent application;

- The named inventors and application failed to make pertinent prior art in existence more than one year to filing the '023 patent of record during the prosecution of the '023 application.

Plaintiff further alleges that because Defendants dispute Plaintiff's allegations regarding the validity of the '023 patent and have expressly reserved their right to claim any attempt by K–Lath to manufacture, distribute, or sell its paper-backed wire lath product as an infringement of the '023 patent, an actual controversy exists that is ripe for declaratory judgment. Plaintiff seeks a judicial declaration as to whether the '023 patent is invalid and whether Plaintiff's wire lath product infringes the '023 patent.

Plaintiff also claims that Defendants' knowing wrongful threatened assertion of infringement claims against its competitors, like K–Lath, violates Section 2 of the Sherman Act, because Defendants have attempted to deter, and have deterred, lawful competition in order to monopolize and maintain monopolistic power over the supply of certain paper-backed wire lath products. As part of their efforts to deter K–Lath's ability to manufacture, distribute, or sell these wire lath products, Davis, on behalf of Jaenson and itself, knowingly and wrongfully reserved its right to claim any attempt by K–Lath to do so as an infringement of the '023 patent.

Although the Patent Examiner allowed the '023 patent based on lack of prior art of record having the same horizontal wires covering both the front face and back face, Jaenson and Davis were allegedly notified that such prior art exists and has been sold in the construction industry since 1985, under the auspices of the International Conference of Building Inspectors' ("ICBI") Evaluation

---

**1.** The '023 patent consists of a certain type of paper-backed wire lath "having a support material and a plurality of horizontal and vertical wires, the horizontal wires spanning the material along both the front face and back face." Compl., ¶¶ 21–22.

Report No. 4369. K–Lath alleges that this prior art exhibited the same characteristics as the '023 patent and was sold under trade names, including, "American Lath," "Omega Lath," and "DW Lath." [2] Thus, Plaintiff alleges that Defendants knowingly procured the '023 patent by fraud because they knew that pertinent prior art existed but never disclosed such art to the PTO. Because Defendants allegedly knew that the '023 patent was invalid based on the prior art, Plaintiff alleges that Defendants' threatened infringement claim would be nothing more than a sham designed to cover an attempt to interfere with the business relationship of a competitor.

On August 19, 1997, September 24, 1997, and October 13, 1997, K–Lath brought the pertinent prior art and related legal deficiencies rendering the '023 patent invalid to the attention of Jaenson. Jaenson, through its legal counsel, responded by notifying K–Lath of the strong presumption of the validity and enforceability of a patent and that K–Lath's counsel had no good faith basis to inform K–Lath that it could infringe the '023 patent. Jaenson also reserved its rights to enforce the '023 patent. Plaintiff alleges that Defendants, through the above warning and implied threat to enforce the allegedly invalid '023 patent, have deterred K–Lath from producing any wire-lath product that might be considered by Defendants to infringe on the '023 patent. After further investigation to confirm the existence of the prior art and suspected invalidity of the '023 patent, K–Lath has proceeded with the manufacture, distribution, and sale of a single line of paper-backed wire lath similar to the prior art.

Plaintiff also alleges that the above facts support state law causes of action against Defendants for interference with prospective economic advantage and unfair competition.

## 2. Evidence Presented by Parties

Plaintiff and Defendants each rely on a series of letters sent between Plaintiff's and Defendants' respective counsel from August,

1997 to June, 1998 regarding the validity of the '023 patent.[3] *See* Exs. A–H attached to Christie Decl. in support of Defendants' Motion; Exs. 1–15 attached to Robinson Decl. in opposition to Defendants' Motion. As noted in the Complaint and the parties' papers, K–Lath initiated contact with Jaenson on August 19, 1997 after becoming aware of the '023 patent and investigating the '023 file history and prior art, which K–Lath alleges was not made part of the record during prosecution of the '023 patent. Compl., ¶ 26; Christie Decl., Ex. A (Letter from K–Lath counsel to Jaenson dated August 19, 1997); Robinson Decl., Ex. 1 (same). In its initial letter, K–Lath informed Jaenson that the '023 patent claims are:

> invalid because they encompass known prior art and further that the '023 [p]atent is unenforceable in view of the failure of [Jaenson] to inform the Patent and Trademark Office of relevant prior art that was known to [Jaenson] and not made of record during the prosecution of the '023 patent.

Christie Decl., Ex. A; Robinson Decl., Ex. 1. K–Lath referred to an example of the prior art, the American Lath product, having similar horizontal wires on the front and back side of the support paper as the '023 patent. *Id.* Finally, K–Lath informed Jaenson that:

> unless, within thirty (30) days of the date of this letter, we receive your company's or your counsel's written reply presenting compelling arguments refuting the opinions expressed herein, K–Lath intends to manufacture [a] competitive lath product which will include horizontal wires disposed on opposite sides of the support paper and will view any action brought by Jaenson Wire company for patent infringement of the '023 Patent as comprising acts of patent misuse.

*Id.*

On September 12, 1997, Jaenson's counsel responded to K–Lath's initial correspondence, requesting a sample of the American Lath product and any other relevant prior art with respect to the '023 patent. Christie

---

2. Plaintiff alleges that "DW Lath" is the short form of Davis' proprietary trade name: "Davis Walker Lath." Compl., ¶ 22.

3. Although the referenced correspondence is between the parties counsel, the Court will refer to the parties during its discussion.

Decl., Ex. B (Letter from Jaenson to K–Lath dated September 12, 1997); Robinson Decl., Ex. 2 (same). In addition, Jaenson stressed to K–Lath the strong presumption and validity of United States patents and cautioned K–Lath's counsel that its August 19, 1997 letter "sets forth no basis for you to advise K–Lath that it can infringe the '023 patent, nor could advice of the kind contained in your letter provide K–Lath with a reasonable or good-faith basis for infringing." *Id.* Jaenson closed by informing K–Lath that it should not rely on Jaenson's letter, action, or inaction "as in any way limiting any rights of Jaenson to enforce the '023 patent." *Id.*

K–Lath, in turn, responded to Jaenson's letter on September 24, 1997, advising Jaenson that the American Lath is also marketed under DW Lath, short for "Davis Walker Lath," the company from which Jaenson originally spun off and was reacquired, such that Jaenson was in the better position to obtain a sample of the prior art. Christie Decl., Ex. C (Letter from K–Lath to Jaenson dated September 24, 1997); Robinson Decl., Ex. 3 (same). In addition, K–Lath, referring to Jaenson's September 12, 1997 letter, stated that Jaenson's "implied threat to enforce an invalid patent continues to cause K–Lath damages on a daily basis ... [Jaenson's] threatened selective enforcement against K–Lath appears to be motivated by a truly anti-competitive agenda." *Id.*

In reply to this latest letter from K–Lath, Jaenson accused K–Lath of "falsely say[ing] that Jaenson wire Company has made an 'implied threat' against K–Lath" and of "falsely assert[ing] that this nonexistent threat is 'caus[ing] K–Lath damages' and that Jaenson has 'threatened selective enforcement against K–Lath.'" Christie Decl., Ex. D (Letter from Jaenson to K–Lath dated September 29, 1997); Robinson Decl., Ex. 4 (same). Jaenson also asserted that K–Lath had "made a number of misstatements of both fact and of law" in its prior correspondence and that K–Lath, not Jaenson, "raised the subject of a future lawsuit." *Id.* Jaenson went on to state that it "had never said anything to indicate that there was any possibility of such a lawsuit. Any assumption by you that such a lawsuit might be likely

lacked—and still lacks—any support from any statement or conduct of Jaenson." *Id.* Jaenson closed by declaring that it:

has never threatened K–Lath in connection with the '023 patent, and Jaenson does not now threaten K–Lath in connection with the '023 patent. *You* are the only one who has raised the subject of an "action brought by Jaenson ... for patent infringement of the '023 Patent." I have said *nothing* to you about such an action. Jaenson and its counsel presently have no plans or intentions concerning such an action.

At the same time, Jaenson Wire has no intention of waiving any rights that it may now have or may acquire in the future. As I pointed out in my September 12 letter, K–Lath should not rely on anything that has or has not been said in this letter—or on any past, present, or future actions or inaction of Jaenson or is counsel—as in any way limiting any rights of Jaenson to enforce the '023 patent.

*Id.*

Thereafter, on October 13, 1997, K–Lath sent its third letter to Jaenson, reiterating its contention that the '023 patent is invalid and explaining that K–Lath's "purpose of bringing this matter to your ... attention is motivated solely by [K–Lath's] legitimate interest and right to lawfully compete in the marketplace." Christie Decl., Ex. E (Letter to Jaenson from K–Lath dated October 13, 1997); Robinson Decl., Ex. 5 (same). K–Lath further asserted that Jaenson needed to immediately address the facts called to its attention regarding the existence of prior art known to Jaenson prior to filing and during the prosecution of the '023 patent. *Id.* Finally, K–Lath expressed its "surprise[ ] by [Jaenson's] apparent attempt to engage in a legal tightrope walking procedure," and informed Jaenson, as follows:

"Your ... failure to immediately address the invalidity and unenforceability issue brought to your attention while refusing to waive any rights that [you] may now have or may acquire in the future comprises an implicit threat to intimidate K–Lath to forego its lawful manufacture of competitive lath products. By requiring K–Lath

to delay its introduction of a competitive product, [Jaenson] has caused, and continues to cause, [K–Lath] substantial damage.

Therefore, be advised that unless you immediately address the above facts and provide us with compelling evidence refuting our invalidity and unenforceability claims, K–Lath will begin the lawful manufacture and sale of its competitive lath product on October 27, 1997." *Id.*

Jaenson again responded to K–Lath's letter by reasserting its position that the '023 patent is valid and that Jaenson "is under no obligation to enter into a debate ... about the patent's validity or enforceability," but may "remain in peaceful possession of its issued United States patent, neither making any claims against K–Lath nor waiving or limiting Jaenson Wire's patent rights." Christie Decl., Ex. F (Letter from Jaenson to K–Lath dated October 27, 1997); Robinson Decl., Ex. 6 (same). However, Jaenson represented that it would call K–Lath to make arrangements to inspect the American Lath "prior art" as K–Lath had suggested. *Id.*

Several months later, on May 14, 1998, K–Lath informed Jaenson of its intention to file the instant lawsuit to prevent K–Lath from "being indefinitely frozen out of a lucrative aspect of the market by veiled threats." Robinson Decl., Ex. 7 (Letter from K–Lath to Jaenson dated May 14, 1998). Thereafter, Jaenson apparently inspected the American Lath prior art. *Id.*, Ex. 8 (Letter from K–Lath to Jaenson dated May 28, 1993). However, because K–Lath "ha[d] not heard anything further ... regarding [Jaenson's] intentions," K–Lath informed Jaenson that it would file the instant suit against Defendants on May 29, 1998. *Id.* Defendants responded by asserting that Jaenson had never threatened K–Lath and that Jaenson had simply reserved its right under the '023 patent. Robinson Decl., Ex. 9 (Letter from Defendants to K–Lath dated June 1, 1998). Defendants further stated:

we have made it as clear as anyone possibly could that [we] are not threatening K–Lath and have no plans to sue K–Lath. We ... [have] taken no action against K–Lath based on the '023 patent. Nor could

we. We have not inspected K–Lath's new product. We do not know its features. *Id.*

In turn, K–Lath responded by asserting that Defendants "have attempted to ... freeze K–Lath out of the market by implicitly threatening a future infringement action." Christie Decl., Ex. G (Letter from K–Lath to Defendants dated June 4, 1998); Robinson Decl., Ex. 10 (same). K–Lath informed Jaenson that it had filed the instant lawsuit, but would "hold off serving the complaint for twenty days, or until June 22, 1998, to permit [Defendants] more than adequate time to inspect K–Lath's competing product." *Id.* In response, Defendants requested that K–Lath provide Defendants with the marketing outlets for K–Lath's product so that Defendants could purchase a commercially available sample. Robinson Decl., Ex. 12 (Letter from Defendants to K–Lath dated June 15, 1998). K–Lath then informed Defendants that a sample of K–Lath's product would be available in its counsel's offices, on the same floor as Defendants' counsel's offices. Christie Decl., Ex. H (various letters regarding inspection of K–Lath's product); Robinson Decl., Ex. 13 (Letter from K–Lath to Defendants dated June 16, 1998). In the end, after several letters were sent between the parties, Defendants did not inspect K–Lath's competing product. *Id.;* Robinson Decl., Exs. 14–17 (Letters sent between the parties dated June 17, June 23, and July 9, 1998).

## II. Discussion

### A. K–Lath's Claim for Declaratory Judgment that the '023 Patent is Invalid and K–Lath's Product is Non–Infringing

#### 1. Standard Re Defendants' 12(b)(1) Motion to Dismiss Plaintiff's Claim for Declaratory Judgment for Lack of Subject Matter Jurisdiction

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This "actual controversy" requirement "is the same

as the 'case or controversy' requirement of Article III of the United States Constitution." *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.,* 655 F.2d 938, 942 (9th Cir.1981) (*"Societe de Conditionnement En Aluminium"*) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). To satisfy the constitutional requirement the dispute at issue "must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co.,* 300 U.S. at 240–41, 57 S.Ct. 461. The opposite of such a dispute, which therefore fails to invoke federal court jurisdiction, is an advisory opinion based on "a hypothetical state of facts." *Id.* 300 U.S. at 241, 57 S.Ct. 461. The difference between an actual controversy and one seeking an impermissible advisory opinion " 'is necessarily one of degree,' and is determined on the totality of the circumstances." *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed. Cir.1993) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

▮ In suits requesting a judicial declaration of patent invalidity or non-infringement, courts apply a two-part test to determine whether an actual controversy exists, thereby invoking the court's subject matter jurisdiction pursuant to the Declaratory Judgment Act.[4] The plaintiff must show both (1) "an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd.,* 4 F.3d at 978; *see also Societe de Conditionnement En Aluminium,* 655 F.2d at 944. In other words,

the declaratory judgment plaintiff must have a "real and reasonable apprehension

that he will be subject to liability" if he commences or continues the activity in question[;] ... [and] "the plaintiff must have actually produced the accused article or have engaged in preparations for production such that 'but for a finding that the product infringes or for extraordinary and unforseen contingencies, the plaintiff would and could begin production immediately.'"

*Heerema Marine Contractors v. Santa Fe Int'l Corp.,* 582 F.Supp. 445, 448–49 (C.D.Cal. 1984) (quoting *Societe de Conditionnement En Aluminium,* 655 F.2d at 944 and *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1210 (7th Cir.1980)). "The test, however stated, is objective and is applied to the facts existing when the complaint is filed." *Arrowhead Indus. Water Inc. v. Ecolochem Inc.,* 846 F.2d 731, 736 (Fed.Cir. 1988).

▮ When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. *See McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *See Sopcak v. Northern Mountain Helicopter Serv.,* 52 F.3d 817, 818 (9th Cir.1995). The principles articulated in *Data Disc, Inc. v. Systems Technology Assocs.,* 557 F.2d 1280, 1284–86 (9th Cir.1977) regarding the evidentiary standard to apply in determining personal jurisdiction are also applicable to determination of subject matter jurisdiction. *Societe de Conditionnement En Aluminium,* 655 F.2d at 942. Thus, when a defendant's motion to dismiss is made as its initial response, plaintiff need only make a prima facie showing that subject matter jurisdiction exists.[5]

---

4. Of course, all actions brought pursuant to the Declaratory Judgement Act must have an independent basis for federal court jurisdiction. Claims arising under United States patent law properly invoke federal court jurisdiction pursuant to 28 U.S.C. § 1338.

5. If the pleadings and other submitted materials raise issues of credibility or disputed questions of

fact, the court may, in its discretion, order a preliminary hearing to resolve the contested issues. In this situation, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence. *Data Disc,* 557 F.2d at 1285. Likewise, where the jurisdictional facts are "intertwined with the merits of the action," it is

*Data Disc,* 557 F.2d at 1285. In this instance a "prima facie" showing means that plaintiff has produced admissible evidence which, if believed, would be sufficient to demonstrate a finding of an "actual controversy" to confer subject matter jurisdiction under the Declaratory Judgment Act. *Id.; Societe de Conditionnement En Aluminium,* 655 F.2d at 942.

## 2. Analysis

■ K–Lath asserts that an actual controversy exists between the parties regarding the validity of the '023 patent and whether K–Lath's competing product infringes the '023 patent, thereby enabling this Court to exercise subject matter jurisdiction over K–Lath's claim for declaratory relief. To support its argument that subject matter jurisdiction exists pursuant to the requirements of the Declaratory Judgment Act, K–Lath submits a chronology of correspondence between its counsel and counsel for Davis and Jaenson, which K–Lath contends establishes K–Lath's "reasonable apprehension" that it will be subject to an infringement action if it continues to produce its competing wire lath product. Defendants, on the other hand, argue that the above correspondence, which was initiated by K–Lath, demonstrates that an actual controversy between the parties does not exist, as Defendants never threatened, explicitly or impliedly, Plaintiff with an infringement suit.

K–Lath alleges, and Defendants do not dispute, that it has placed, or begun preparations to place, its competing wire lath product into the relevant market. Thus, the only disputed element of the two-part inquiry used to determine whether an actual controversy exists [6] is whether Defendants' conduct "created an objectively reasonable apprehension on the part of [K–Lath] that [Defendants] will initiate suit" if K–Lath manufactures, distributes, or sells its competing wire lath product. *EMC Corporation v. Norand Corporation,* 89 F.3d 807, 811 (Fed.Cir.1996). The Court's Order, therefore, addresses only whether K–Lath has submitted sufficient evidence to establish a prima facie case of subject matter jurisdiction based on the existence of an actual controversy due to its objectively reasonable apprehension that it would become the target of an infringement suit by Defendants.

■ K–Lath points to several statements contained in the correspondence between Defendants and K–Lath and to Defendants' failure to respond to K–Lath's claims to show that, under the totality of the circumstances,[7] K–Lath reasonably feared that Defendants

---

preferable that determination of jurisdiction be made at trial. *Id.* 557 F.2d at 1285–1286, fn. 2.

In the instant case, the Court finds that an evidentiary hearing is unnecessary because the Court need not determine issues of credibility or disputed material facts. K–Lath and Defendants rely on the same documents, which speak for themselves. Thus, K–Lath need only present a prima facie case that an actual controversy exists permitting the Court to exercise its jurisdiction over Plaintiff's claim for declaratory relief.

6. Because Plaintiff has already introduced into the market, or prepared to introduce, the product for which Plaintiff seeks a judicial determination of non-infringement, Plaintiff has satisfied the requirement articulated by the courts reviewing declaratory judgment actions for patent invalidity or non-infringement that it "actually produce or be prepared to produce an allegedly infringing product." *EMC Corporation v. Norand Corporation,* 89 F.3d 807, 811 (Fed.Cir. 1996); *see also Arrowhead Indus. Water. Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir. 1988) (quoting the court's statement in *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d

953, 955 (Fed.Cir.1987), that "the plaintiff must actually have either produced the device or have prepared to produce the device" to establish an actual controversy in a patent suit seeking declaratory judgment).

7. "Declaratory judgment jurisdiction does not require direct threats. Indirect threats or actions that place the declaratory plaintiff in reasonable apprehension of suit will meet the test for a declaratory judgment action." *BP Chemicals Ltd.,* 4 F.3d at 979. Thus, K–Lath must establish that Defendants' "conduct rose to a level to indicate an intent to enforce [their] patent." *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 888 (Fed. Cir.1992) (when "conduct falls short of an express charge of infringement, [court] must look to the totality of the circumstances"); *see also EMC Corp.,* 89 F.3d at 811–12 (explaining that an express charge of infringement and threat of suit is not required to place a declaratory plaintiff in reasonable apprehension of suit but "may be induced by subtler conduct;" and stating that a court's inquiry into the existence of an actual controversy "does not turn on whether the parties have used particular 'magic words' in communicating with one another").

would institute an infringement action against it. For instance, K–Lath contends that Defendants, major competitors of K–Lath, impliedly threatened K–Lath with an infringement suit in response to K–Lath's initial attempt "to reason with defendants and their patent counsel to remove the admitted 'peril' [the '023 patent] threatening K–Lath's ability to freely compete." Opp. at 1:13–28. K–Lath specifically references Jaenson's assertions in its September 12, 1998 letter that (1) no facts exist "to provide K–Lath with a reasonable or good-faith basis for infringing" the '023 patent; and (2) Jaenson's response to K–Lath's initial letter that K–Lath should not rely on "anything that has or has not been said in this letter ... as in any way limiting any rights of Jaenson to enforce the '023 patent." *Id.* at 2:3–5; Christie Decl., Ex. B; Robinson Decl., Ex. 2. K–Lath asserts that Jaenson continued to place K–Lath in apprehension of an infringement suit throughout the parties, correspondence by reiterating that it "has not intention of waiving any rights that it may now have or may acquire in the future ... to enforce the '023 patent." Christie Decl., Ex. D.; Robinson Decl., Ex. 4; Opp. at 4:21–28.

In addition, K–Lath contends that this repeated reservation of rights in connection with Defendants' long delay in examining the prior art provided by K–Lath, subsequent refusal to comment on how the prior art affects the merits of their position regarding the validity of the '023 patent, and failure to inspect K–Lath's competing lath product, demonstrates that "by artful wording of a succession of letters drafted by a law firm with intimate knowledge of the relevant case law, defendants hoped to deprive K–Lath of the right to initiate any action to remove or resolve this threat by disclaiming any *immediate* decision to enforce their '023 Patent." Opp. at 2:14–3:7.

Although Defendants agree that a disagreement exists between the parties regarding the validity of the '023 patent, and do not dispute that they "opted to forego legal expenditures in analyzing the alleged prior art identified by K–Lath," as well as refused to enter into a covenant not to sue K–Lath, Defendants contend that these facts do not demonstrate *reasonable* apprehension of suit. Reply at 5:12–19. Rather, Defendants assert that K–Lath's Complaint and supporting evidence show that Defendants "merely refused to limit or waive their right to enforce the '023 Patent." Motion at 4:13–15. Defendants emphasize the fact that *K–Lath* first contacted Defendants; that Defendants expressly told K–Lath that, while reserving its right under the '023 patent, Defendants "[have] never threatened K–Lath in connection with the '023 patent ... [and] presently [has] no plans or intentions concerning such an action;" and that Defendants have not inspected K–Lath's wire lath product, to support their contention that K–Lath could not have reasonably apprehended a suit by Defendants. Opp. at 4:18–27; Christie Decl., Ex. D; Robinson Decl., Ex. 4.

Moreover, Defendants argue that Jaenson's reservation of its rights and refusal to provide K–Lath with a covenant not to sue or to debate the merits of K–Lath's claims regarding the invalidity and/or unenforceability of the '023 patent are Defendants' right under the United States patent laws which "cannot create a reasonable apprehension of an imminent lawsuit sufficient to invoke declaratory judgment jurisdiction." Motion at 5:6–19. Defendants cite to *International Harvester Company v. Deere & Co.*, 623 F.2d 1207, 1213 (7th Cir.1980), consisting of facts similar to the instant case, to support their argument that Jaenson's "refusal to grant patent clearance cannot create a reasonable apprehension."

In that case, a competitor of the patentee, with whom the patentee was involved in litigation relating to a different product, submitted an unsolicited drawing to the patentee and requested a confirmation that it did not infringe the patent in question. *Id.* 623 F.2d at 1211–12. In addition, the competitor informed the patentee that if the patentee refused to respond or found infringement, the competitor would seek judicial relief. *Id.* 623 F.2d at 1212. In response, the patentee did not take a position with respect to plaintiff's product and at some point allegedly represented to plaintiff that it would permit production of the product if paid. *Id.* Find-

ing no reasonable apprehension of suit, the Seventh Circuit stated the following:

> [Plaintiff's] argument would result in a requirement that a patentee grant clearance to a competitor's designs upon request or, by its refusal to do so, create declaratory judgment jurisdiction. A reasonable apprehension could thus be created by a patentee's refusal to act. That is not the law and we decline to establish [this] rule.... It is clear that [plaintiff's] unsolicited demand that [defendant] admit noninfringement or face suit coupled with [defendant's] noncommittal response could not have created a reasonable apprehension on [plaintiff's] part.

*Id.* 623 F.2d at 1213.[8]

Similarly, K–Lath initiated contact with Defendants, demanding that they "present[ ] compelling arguments refuting" K–Lath's charges of invalidity of the '023 patent, as well as asking Defendants to inspect K–Lath's product to determine if Defendants would be "willing to execute a covenant not to sue, or concede the invalidity of their patent." Christie Decl., Ex. A.; Robinson Decl., Exs. 1, 11. Defendants, however, refrained from addressing the merits of K–Lath's claims and ultimately did not inspect K–Lath's product, which was their right.[9] *See Shell Oil Co.,* 970 F.2d at 889 (defending patent upon accusations by plaintiff that patent is invalid and not infringed "should not be considered to have threatened [plaintiff]

with suit"); *International Harvester Co.,* 623 F.2d at 1213 (explaining that "refusal to grant patent clearance cannot create a reasonable apprehension").

The facts of *Shell Oil Co. v. Amoco Corp.* are also analogous to the instant case. In that case, the court found that the patentee's statement made during licensing negotiations that the plaintiff's activities fell within the claims of its patent and its affirmative response to plaintiff's question regarding whether the patentee intended to enforce its patent did not constitute charges of infringement. *Shell Oil Co.,* 970 F.2d at 888–89. Although not engaged in licensing discussions, the instant case is similar in that when Defendants were *approached* by K–Lath, who claimed that '023 patent was invalid, Defendants insisted on its validity and refused to waive any rights to enforce the '023 patent. As the court recognized in *Shell Oil Co.,* failure to reserve their right to enforce the '023 patent "would have potentially given [K–Lath] free reign to infringe [Defendants'] patent." *Id.* 970 F.2d at 889. Moreover,

> [t]he Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening patentee into court. We will not encourage litigation by finding a threat to sue only because a non-threatening party, when approached by a possible infringer, asserted its best arguments in discussions.

8. K–Lath contends that *International Harvester Co.* is inapplicable in this case because the court concluded that no actual controversy existed upon weighing the evidence after an evidentiary hearing and finding no factual pattern existed to give rise to reasonable apprehension, determining that the plaintiff had not sufficiently prepared to engage in the allegedly infringing activity, and deciding that a pending lawsuit may make the plaintiff's claim for declaratory judgment moot. Opp. at 10:5–23. The Court finds the above to be distinctions without a difference. First, the Court need not conduct an evidentiary hearing because it is not making credibility determinations in this case. Second, the parties do not dispute that K–Lath has produced or is prepared to produce the infringing product. Finally, the fact that a pending suit does not exist in this case does not impact on this Court's acceptance of the Seventh Circuit's sound reasoning that a refusal by a patentee to grant patent clearance upon an

unsolicited demand by a competitor cannot create a reasonable apprehension.

9. K–Lath presents no case law, and the Court has not found any cases, which support K–Lath's argument that Defendants' reservation of their rights and failure to examine or comment on the prior art proffered by K–Lath or K–Lath's product raises a reasonable apprehension of suit. In fact, Defendants, as they note in their moving papers, would subject themselves to possible sanctions if they filed suit for infringement of the '023 patent, as they have not compared the '023 patent claims with K–Lath's product. *See Judin v. United States,* 110 F.3d 780, 784–85 (Fed.Cir.1997) (reversing denial of Rule 11 sanctions against patentee and its counsel who did not make "a reasonable effort to ascertain whether the accused devices satisfied the two key claim limitations" prior to filing an infringement suit).

*Shell Oil Co.*, 970 F.2d at 889.[10]

K–Lath, however, contends that given the nature of the correspondence between K–Lath and Defendants and the fact that Defendants are competitors of K–Lath, Defendants' refusal to address the facts raised by K–Lath regarding the '023 patent's invalidity, accompanied by Defendants' reservation of their rights to enforce the '023 patent and refusal to provide a covenant not to sue adequately demonstrates K–Lath's reasonable apprehension that it will be subject to suit if it manufactures, distributes, or sells its competing wire lath product. Opp. at 3:2–3. K–Lath looks to *BP Chemicals Ltd.*, 4 F.3d at 980 for support, where the Federal Circuit declared that "a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination" of reasonable apprehension. However, the *BP Chemicals Ltd.* court also indicated that such refusal is *not* dispositive, and found no actual apprehension in that case where the patentee refused to promise not to enforce its patent.[11] *Id.* 4 F.3d at 980. Furthermore, the court explained that "the objective words and actions of the patentee ... are controlling" in determining reasonable apprehension. *Id.* 4 F.3d at 979. In addition, the Court finds K–Lath's reliance on *Fina Research v. Baroid Ltd.*, 141 F.3d 1479 (Fed.Cir.1998), for the proposition that Defendants' refusal to promise not to sue K–Lath entitles K–Lath to "a declaration as to the '023 Patent's validity and enforceability," misplaced. Opp. at 3:13–19. In *Fina Research*, the court found reasonable apprehension where "the defendants

ha[d] not disavowed their threats so as to remove the reasonable apprehension of suit that the threats engender[ed]." *Fina Research*, 141 F.3d at 1483. However, in that case, in a letter to plaintiff, the defendants specifically stated that they intended "to vigorously protect and enforce [their] rights in the subject patents, *including the filing of suit if necessary.*" *Id.* 141 F.3d at 1482 (emphasis added). No such threat has been made by Defendants regarding enforcement of the '023 patent, such that a refusal to provide a covenant of non-suit creates an actual controversy between the parties.

While K–Lath may have subjectively feared suit from Defendants, "a subjective apprehension is insufficient without objective substance." [12] *Id.*, 4 F.3d at 979. Having objectively examined Defendants' statements drawn from the submitted correspondence and Defendants' actions, or lack thereof, the Court finds that Defendants' conduct did not "r[i]se to a level sufficient to indicate an intent to enforce (their) patent." *Shell Oil Co.*, 970 F.2d at 888. K–Lath's claim is premature and, therefore, may not be used "to drag" Defendants into court. Thus, the Court, cannot exercise jurisdiction over K–Lath's claim for declaratory judgement, as K–Lath has failed to meet its burden demonstrating the existence of an actual controversy. Because the Court does not have jurisdiction over K–Lath's first cause of action, the Court does not address Defendants' motion to dismiss K–Lath's inequitable conduct claims contained in its claim for declaratory judgment.

**10.** K–Lath contends that *Shell Oil Co.* is distinguishable because the parties in the instant case were not involved in licensing negotiations, but "immediately deadlocked over the validity and enforceability of defendants' patent." Opp. at 9:16–10:4. However, the Court finds that this distinction does not affect the applicability of the principles articulated by the *Shell Oil Co.* court. K–Lath cites to no case law contrary to *Shell Oil Co.* that requires a patentee to prove the validity of its patent upon an accusation by a competitor that it is invalid.

**11.** K–Lath submits that *BP Chemicals Ltd.* is distinguishable because the lower court's finding was based on its determination that the plaintiff brought its declaratory action suit as a "marketing strategy, and not in response to a threat by [the patentee] or reasonable apprehension of

suit," and was "buttressed by the undisputed fact of the absence of infringing activity." Opp. at 8:8–16; *BP Chemicals Ltd.*, 4 F.3d at 980. While "[t]here is not always an easy demarcation between a reasonable apprehension on the part of a would-be infringer, and the situation whereby a patent, by its existence, inhibits unauthorized practice of its subject matter," the Court finds under the instant circumstances and considering Defendants' "objective words and actions," Defendants' refusal to provide a covenant not to sue does not constitute a charge of infringement or an indirect threat of suit. *BP Chemicals Ltd.*, 4 F.3d at 980.

**12.** "Indeed, it is the objective words and actions of the patentee that are controlling" in determining reasonable apprehension of suit. *BP Chemicals Ltd.*, 4 F.3d at 979.

## B. K–Lath's Claim for Anti–Trust Violations

Unlike K–Lath's claim for declaratory relief, the Court has independent subject matter jurisdiction over K–Lath's second cause of action for antitrust violations pursuant to 28 U.S.C. §§ 1332 and 1337 and, therefore, may consider Defendants' motion to dismiss this cause of action for failure to state a claim for which relief can be granted.

### 1. Standard for 12(b)(6) Motion to Dismiss

■ A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988)

A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir.1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v.*

*Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir. 1986).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

### 2. Analysis

■ In the patent context, a claimant may state a claim for an antitrust violation under 15 U.S.C. § 2 by alleging "the enforcement of a patent procured by fraud on the Patent Office ... provided the other elements necessary to a § 2 case are present." *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 174, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *see also Nobelpharma AB v. Implant Innovations*, 141 F.3d 1059, 1071 (Fed.Cir.1998) (agreeing that if "asserted patent was acquired by means of either a fraudulent misrepresentation or a fraudulent omission and that the party asserting the patent was aware of the fraud when bringing suit, such conduct can expose a patentee to liability under the antitrust laws"). In addition, a claim may be stated for violation of 15 U.S.C. § 2 if the patentee brings an infringement suit as " 'a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.' " *Id.* 141 F.3d at 1068 (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)).

■ K–Lath contends that it has properly pled a claim for antitrust violations by alleging that Defendants procured the '023 patent through inequitable conduct by failing to disclose known prior art to the PTO and by knowingly threatening assertion of an infringement claim against K–Lath in order to interfere with K–Lath's business. Compl., ¶ 22. Defendants, however, argue that for the same reasons this Court lacks jurisdiction over K–Lath's Declaratory Judgment claim, K–Lath's antitrust claim fails because

Defendants have not enforced or threatened to enforce the '023 patent against K–Lath.

The Federal Circuit and Supreme Court clearly require the enforcement or assertion of the patent as an element necessary to establish antitrust liability. *See, e.g., Walker Process,* 382 U.S. at 174, 86 S.Ct. 347 (*enforcement* of patent procured by fraud violates Sherman Act); *Nobelpharma AB,* 141 F.3d at 1071 (*assertion* of patent procured by fraud subjects patentee to antitrust liability); *see also California Eastern Laboratories v. Gould,* 896 F.2d 400, 403 (9th Cir.1990) (finding case outside of *Walker Process* antitrust liability "[w]ithout some effort at enforcement").[13] Thus, even if K–Lath has pled its allegations of inequitable conduct or fraud with sufficient specificity,[14] because the Court finds Defendants did not threaten K–Lath with an infringement suit, K–Lath's Sherman Act claim cannot stand.

The Court recognizes that this determination comes from its review of letters which were not attached to K–Lath's Complaint. However, because K–Lath refers to and quotes from this correspondence in its Complaint, K–Lath is "on notice of the document[s'] contents," and the Court may treat the correspondence submitted by K–Lath and Defendants as part of K–Lath's pleadings without converting Defendants' motion to dismiss into a motion for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.1994) (holding "that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss").

Moreover, the parties do not dispute the *contents* of the letters submitted to the Court or the fact that the letters were sent.

Thus, based on the Court's analysis of K–Lath's claim for declaratory judgment and finding no threat or reasonable apprehension of an infringement suit, "it appears beyond doubt that [K–Lath] can prove no set of facts in support of [its antitrust] claim which would entitle [it] to relief," such that dismissal of K–Lath's second cause of action under Rule 12(b)(6) is proper. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## C. K–Lath's State Law Claims

Because the Court dismisses K–Lath's claims brought pursuant to the Declaratory Judgment Act and the Sherman Act, the Court no longer has jurisdiction over K–Lath's third and fourth causes of action for interference with existing and prospective economic advantage and unfair competition. Moreover, these claims are premised on the same facts which the Court has found inadequate in its review of K–Lath's federal claims.

## III. Conclusion

For all of the reasons set forth above, the Court hereby ORDERS that Defendants' motion to dismiss K–Lath's first cause of action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and motion to dismiss K–Lath's second cause of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) are GRANTED. The Court DISMISSES K–Lath's third and fourth causes of

---

**13.** The Court notes that *Nobelpharma AB,* 141 F.3d at 1068 expressly overruled *Cygnus Therapeutics Sys. v. ALZA Corp.,* 92 F.3d 1153 (Fed.Cir. 1996), which favorably cites *Gould,* to the extent *Cygnus* held that the court should apply the law of the regional circuit in which the district court sits to determine whether a patentee's "conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws." *Cygnus* applied Ninth Circuit law, citing *Gould,* and concluded that the same facts which demonstrated the plaintiff's failure to establish declaratory judgment jurisdiction also "compel the conclusion that no reasonable fact

finder could find that [defendant] has acted to enforce" its patent. *Cygnus,* 92 F.3d at 1161–62. Although *Nobelpharma AB,* mandates the application of Federal Circuit law, because the Ninth Circuit's requirement of patent enforcement to establish antitrust liability is the same as that of the Federal Circuit, the Court finds pertinent *Gould's* and *Cygnus'* analysis on this issue.

**14.** Defendants contend that K–Lath has not complied with the requirements of Federal Rule of Procedure 9(b).

action for violations of state law for lack of subject matter jurisdiction.

**SO ORDERED.**