FINA RESEARCH, S.A.,
Plaintiff–Appellant,

v.

BAROID LIMITED, Defendant–Appellee,

and

Henkel Kgaa, Defendant–Appellee.

No. 97–1429.

United States Court of Appeals,
Federal Circuit.

April 17, 1998.

William D. Harris, Jr., Locke, Purnell, Rain, Harrell, P.C., of Dallas, TX, argued for plaintiff–appellant. With him on brief was Michael W. Piper.

Rudolf E. Hutz, Connolly, Bove, Lodge & Hutz, of Wilmington, DE, argued for defendants–appellees. With him on brief were Collins J. Seitz, Jr., and James M. Mulligan, Jr. of counsel were V. Bryan Medlock Jr. and John A. Dondrea, Sidley & Austin, of Dallas, TX.

Before CLEVENGER, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.

CLEVENGER, Circuit Judge.

This appeal presents the issue whether there may be an "actual controversy" for purposes of the Declaratory Judgment Act, 28 U.S.C. § 2201, when the plaintiff's potential liability is only for inducing infringement under 35 U.S.C. § 271(b). Fina Research, S.A. (FRSA) appeals the dismissal of its declaratory judgment action against Baroid Limited (Baroid) and Henkel KGaA (Henkel). Fina Research S.A. v. Baroid Ltd., Civil No. 3:94–CV–2075–H (N.D.Tex. May 30, 1997) (order). Holding that FRSA had no reasonable apprehension of suit for inducing infringement, the district court dismissed, without prejudice, the action for lack of jurisdiction. Because this ruling was in error, we reverse.

I

FRSA manufactures FINAGREEN, which is derived from vegetable oil. FRSA sells FINAGREEN to customers for use as an ingredient in a drilling mud or fluid employed when drilling for oil. According to the record, FRSA has not, to date, sold FINAGREEN to any customer in the United States.

In this action, FRSA seeks a judicial declaration that FINAGREEN does not infringe U.S. Patent Nos. 5,232,910 (the '910 patent) or 5,252,554 (the '554 patent), and that the two patents are invalid and unenforceable. The defendants are the joint assignees of the two patents. The two patents claim multi-ingredient drilling muds, of which FINAGREEN may be one of the ingredients. Because FRSA has not sold FINAGREEN to any customer in the United States, none of the parties contend that any direct infringement has yet occurred. See 35 U.S.C. § 271(a) (1994).

This dispute has been before this court previously on appeal. In 1994, FRSA filed a declaratory judgment action against Baroid Drilling Fluids Inc. (BDFI). BDFI stipulated that it had no legal interest in either of the patents in suit. FRSA subsequently amended its complaint to join Baroid and Henkel. On BDFI's motion, the district court dismissed, without prejudice, the case against BDFI for want of jurisdiction. We affirmed the dismissal. Fina Research S.A. v. Baroid Drilling Fluids, Inc., No. 96–1137, 1996 WL 521465 (Fed.Cir.1996) (nonprecedential) (disposition reported in table format at 98 F.3d 1357). We reasoned that, because

BDFI had no legal interest in the two patents and therefore could not bring suit for patent infringement, there was no actual controversy between FRSA and BDFI that would support jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994). *See Fina,* 1996 WL 521465, at *2. With respect to Baroid and Henkel, it was not clear that either party had been properly served and made a party to the suit by the time of the district court's dismissal order. *See id.* at *3. Consequently, we affirmed the dismissal of FRSA's action. In so doing, we wrote that "[w]e wish to make clear that we do not address or resolve any possible dispute between [FRSA] and the patent owners, [Baroid] and Henkel." *Id.*

In 1996, FRSA filed a motion requesting that the district court reopen the case, which the court granted with respect to Baroid and Henkel. The defendants moved to dismiss the action for want of jurisdiction. After a hearing, the district court issued an order dismissing the case. FRSA appealed the dismissal, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## II

■ We regularly review whether there is jurisdiction over an action seeking a declaratory judgment. *See generally Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058–59, 35 USPQ2d 1139, 1142–43 (Fed.Cir.1995). Jurisdiction under the Declaratory Judgment Act requires an "actual controversy." 28 U.S.C. § 2201(a). To determine whether there is an actual controversy in declaratory judgment actions involving allegations of patent noninfringement, invalidity, or unenforceability, we apply a two-prong inquiry:

There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Super Sack,* 57 F.3d at 1058, 35 USPQ2d at 1142 (quoting *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978, 28 USPQ2d 1124, 1126 (Fed.Cir.1993)) (internal quotation marks and emphases omitted). The declaratory judgment plaintiff bears the burden of proving that there is an actual controversy. *See id.* Finally, even if there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction rests within the sound discretion of the district court. *See, e.g., Serco Servs. Co. v. Kelley Co.,* 51 F.3d 1037, 1039, 34 USPQ2d 1217, 1218 (Fed.Cir. 1995).

■ We review a dismissal for lack of an actual controversy as a question of law subject to plenary appellate review. *See, e.g., Super Sack,* 57 F.3d at 1058, 35 USPQ2d at 1142. Even so, we keep in mind that the district court's "view of the legal effect of the fact pattern before it is not to be lightly disregarded." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735, 6 USPQ2d 1685, 1688 (Fed.Cir.1988).

## III

The issue on appeal distills down to whether there is an actual controversy over the declaratory judgment action when FRSA may be liable only for inducing infringement. This issue comes to us in the following manner.

The defendants have averred that FINA-GREEN in combination with other ingredients would not infringe the '554 patent. Such an admission means that suit for infringing, in any fashion, the '554 patent may not be brought against FRSA for FINA-GREEN. *See Super Sack,* 57 F.3d at 1059, 35 USPQ2d at 1143; *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 636, 19 USPQ2d 1545, 1549 (Fed.Cir.1991). Of course, this covenant applies only to the composition of FINAGREEN that FRSA has disclosed during this litigation.

■ With respect to the '910 patent, FRSA may be liable, under the present circumstances, only for inducing infringement under 35 U.S.C. § 271(b). First, suit may not be brought against FRSA for contributory infringement, because according to the defendants, FINAGREEN is a "staple arti-

cle or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Second, both parties agree that FRSA has no intention of directly infringing the '910 patent. According to the defendants, the '910 patent claims drilling muds having several elements, and FINAGREEN would satisfy, at most, one element of the multi-element claims. In its usual course of business, FRSA does not, before selling FINAGREEN, combine it with any other ingredients. Direct infringement of the '910 patent would therefore be possible, under the present circumstances, only if a customer of FRSA were to mix FINAGREEN with other ingredients.

In sum, FRSA may be liable, at this time, only for inducing infringement of the '910 patent.

## IV

■ In dismissing the case, the district court held that FRSA had failed to satisfy the first prong of the two-prong inquiry for justiciability. According to the court, there was no reasonable apprehension on the part of FRSA that it would face a suit for inducing infringement. We reverse the dismissal of the case, for the defendants made threats that create a reasonable apprehension on the part of FRSA that it will face suit for inducing infringement.

On appeal, FRSA points to, among other things, two letters that it urges satisfy the first prong of the justiciability test. In the first letter, dated October 21, 1993, an attorney for the defendants, William Johnson, wrote:

> Our firm represents Baroid Drilling Fluids, Inc. ("Baroid") in its various intellectual property matters. Baroid and the Henkel Corporation together own all right, title and interest in U.S. Patent Nos. 5,232,910 and 5,252,554, copies of which are enclosed for your ease of reference.
>
> In your faxed letter of October 1, 1993 to Baroid, a copy of which is also enclosed, you indicate your company's intention to introduce FINAGREEN into the United States to be used as a drilling fluid.

> Please be advised that Baroid considers FINAGREEN, if introduced into the United States, to be an infringement of one or both of the subject patents. Baroid, in cooperation with Henkel, *intends to vigorously protect and enforce its rights in the subject patents, including the filing of suit if necessary.*

(Emphasis added.) After counsel for FRSA responded to these allegations in a letter dated November 9, 1993, Mr. Johnson wrote to FRSA a second time in a letter dated November 15, 1993:

> To provide you with a better understanding of our basis for the opinion *that [FRSA's] proposed introduction of its FINAGREEN product into the United States would constitute infringement* of one or both of U.S. Patent Nos. 5,232,910 and 5,252,554, I have enclosed a copy of SPE Paper No. 26737 which was presented by [FRSA] at the Offshore European Conference held in Aberdeen, Scotland on September 7–10, 1993.

> .    .    .    .    .

> It is our considered opinion that for the reasons as set forth above, *[FRSA] is actively inducing the infringement of one or both of the subject patents under 35 U.S.C. 271(b)* and may very well be held to be a contributory infringer under 35 U.S.C. 271(c).

> Your client should be aware that *Baroid has every intention of protecting its rights under these patents.*

(Emphases added.)

Under our precedent, we must hold that the two Johnson letters create a reasonable apprehension of suit on the part of FRSA that it will face a suit for inducing infringement of the '910 patent. The law states that a letter threatening an infringement suit unless the alleged infringer ceases the offending activity satisfies the first prong of the justiciability test. *See, e.g., EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812, 39 USPQ2d 1451, 1454 (Fed.Cir.1996) (holding that there was a reasonable apprehension of suit and that the "most telling evidence" was a letter suggesting that the management of the corporate-assignee favored litigation), *cert. de-*

*nied*, —— U.S. ——, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997); *see also Super Sack*, 57 F.3d at 1054, 35 USPQ2d at 1142–43 (discussing the first prong of the justiciability inquiry). We read the Johnson letters to manifest an ample-enough threat. In the first letter, the defendants issued allegations that FRSA would generally infringe their patents if FRSA were to introduce FINA-GREEN into the U.S. market, and they threatened suit if that were to happen. In the second letter, the defendants indicated that the use of FINAGREEN in a drilling fluid by a U.S. customer of FRSA would make FRSA liable for inducing infringement and might make FRSA liable for contributory infringement. The second letter concludes with the defendants' assertion that they intended to protect their rights. These letters are "threatening," and they contain no countervailing message that was "reassuring." *Arrowhead*, 846 F.2d at 737, 6 USPQ2d at 1690.

The defendants protest such a conclusion. First, they argue that we should not consider the first Johnson letter, because the letter was premised on the mistaken belief that FINAGREEN itself was a drilling fluid. Second, the defendants contend, and the district court agreed, that they had disavowed the two Johnson letters. These arguments, which we address in turn, are unavailing.

### A

The defendants, on appeal, attempt to distance themselves from the first Johnson letter. In that letter, Mr. Johnson indicated his belief that FRSA intended FINAGREEN "to be used as a drilling fluid." Because FINA-GREEN requires other ingredients to function as a drilling fluid, the defendants urge that we disregard the first letter when deciding whether there is a reasonable apprehension of suit. According to the defendants, the second Johnson letter does not, standing alone, create the necessary apprehension.

We refuse to sanction the defendants' attempt to moot the actual controversy by neutralizing the first Johnson letter. Although the defendants' counsel may have been confused, the general threats in the first Johnson letter, which are broad enough to include all forms of infringement, sweep in FINAGREEN, for FRSA may infringe the patents in suit by inducing infringement. More importantly, the defendants notably forfeited their chance to nullify the full breadth of the first Johnson letter. Upon being informed by FRSA that FINAGREEN was a single ingredient of a multi-ingredient drilling fluid, the defendants pointedly asserted in the second Johnson letter that FRSA was inducing infringement and that they intended to protect their "rights under [the] patents." This threat, which the defendants issued after being informed of FINA-GREEN's nature, signals the defendants' continued intent to enforce their patents.

### B

■ In dismissing the case, the district court concluded that the defendants had disavowed the Johnson letters. Before us, the defendants maintain that the Johnson letters have been disavowed throughout the litigation. The defendants refer to a letter dated September 23, 1996, which was written after FRSA had filed suit, in which counsel for Baroid wrote that Baroid "has not and does not make any claim of infringement against [FRSA]."

Under our precedent, the defendants have not disavowed their threats so as to remove the reasonable apprehension of suit that the threats engender. In *Super Sack*, we held that, because the patentholder "is forever estopped by its counsel's statement of nonliability … from asserting liability against [the alleged infringer] in connection with any products that [it] made, sold or used," there was no "reasonable apprehension that it will face an infringement suit." *Super Sack*, 57 F.3d at 1059, 35 USPQ2d at 1143. As a result, there was no actual controversy. *See id.* at 1055, 57 F.3d 1054, 35 USPQ2d at 1140. In *Spectronics*, we held that, by filing with the district court a covenant not to sue the declaratory judgment plaintiff for infringement of the patent in suit, the patentholder was "forever estopped from asserting the … patent claims against the [declaratory judgment plaintiff]." *Spectronics*, 940 F.2d at 636, 19 USPQ2d at 1549. As a result, the controversy was rendered moot. *See id.* at

638, 19 USPQ2d at 1551. "Having requested a declaration of non-infringement of the . . . patent claims, [the declaratory judgment plaintiff] for all practical purposes has won the case pleaded in its complaint." *Id.* at 636, 19 USPQ2d at 1549.

The defendants have not eliminated the reasonable apprehension by making a covenant that is equivalent to those in *Super Sack* or *Spectronics.* The defendants may still, as is explained above in part III, bring suit against FRSA for inducing infringement of the '910 patent. We confirmed the defendants' position at oral argument, for when we queried, counsel for the defendants declined to promise that they would not bring suit against FRSA for inducing infringement of the '910 patent.

The defendants respond that they are not required to covenant not to sue FRSA to avert creating a reasonable apprehension of suit. This statement of the law is correct, as far as it goes. *See, e.g., BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 980, 28 USPQ2d 1124, 1128 (Fed.Cir.1993) ("Although a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination, this factor is not dispositive." (citations omitted)). However, this law does not save the defendants, for the issue here is whether they have eliminated a reasonable apprehension of suit already in existence, not whether they have created a reasonable apprehension in the first instance. The Johnson letters create the necessary apprehension. Were the defendants to eliminate the reasonable apprehension by proffering the necessary *Super Sack* or *Spectronics* covenant, they could moot this declaratory judgment action. They have chosen not to do so, and as a result, the first prong of the justiciability test remains satisfied.

We do not mean to suggest that a patentholder who threatened suit may dispel the pall of an already existing reasonable apprehension only by covenanting not to sue. We can imagine a case in which the threat may dissipate because of, for example, changed circumstances. Such an exception to the requirements of *Super Sack* and *Spectronics* must necessarily be a narrow one, however, for otherwise a patentholder could "attempt[ ] extra-judicial patent enforcement" with scare-and-run tactics that the Declaratory Judgment Act was intended to forestall. *Arrowhead,* 846 F.2d at 735, 6 USPQ2d at 1688. Because this case does not present, for example, changed circumstances, the exception does not apply. The apprehension that the defendants created stands.

## V

■ Finally, the defendants contend that, under *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 28 USPQ2d 1124 (Fed.Cir. 1993), there is no actual controversy because no customer of FRSA has directly infringed the '910 patent. In making this argument, the defendants invoke the second prong of the justiciability inquiry. The "first prong looks to [the patentholder's] conduct; its second to that of [the declaratory judgment] plaintiff." *Arrowhead,* 846 F.2d at 736, 6 USPQ2d at 1689. Whether direct infringement must have already occurred for there to be an actual controversy predicated only on inducing infringement is a matter for the second prong.

The district court, in an earlier ruling in this case, held that FRSA had satisfied the second prong of the justiciability inquiry. Before the first appeal to this court, the district court ruled, in a motion to dismiss, that FRSA had made meaningful preparations for inducing infringement. At the hearing on the defendants' motion to dismiss, the granting of which led to this appeal, the district court decided against revisiting the second prong, even though it expressed reservations about its earlier conclusion that the prong had been satisfied. Because the court dismissed the declaratory judgment action on the ground that the first prong had not been met, the court declined to reconsider its ruling on the second one.

■ Were we to agree with the gloss defendants put on *BP Chemicals,* we would affirm the district court's dismissal of the case, because there is no evidence in the record of direct infringement by any customer of FRSA. The defendants correctly state that direct infringement is a prerequisite to inducing infringement. *See, e.g., Met–Coil*

*Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed.Cir. 1986). From this uncontroverted proposition, however, the defendants erroneously extrapolate a holding from *BP Chemicals* to the effect that, for there to be an actual controversy predicated only on inducing infringement, direct infringement must have already occurred. We disagree with the defendants.

In that case, BP Chemicals Ltd. (BP Chemicals) brought a declaratory judgment action against Union Carbide Corp. (Union Carbide). *See BP Chems.,* 4 F.3d at 976–77, 28 USPQ2d at 1124. BP Chemicals sought a declaration that a process that it practiced did not infringe a patent owned by Union Carbide, and that the patent was invalid and unenforceable. We affirmed the dismissal of the action, because there was no reasonable apprehension of suit on the part of BP Chemicals. *See id.* at 980, 4 F.3d 975, 28 USPQ2d at 1128.

The defendants understand the following passage from *BP Chemicals* to require direct infringement in this circumstance:

> The agreement to defend or indemnify a third person does not provide the actual controversy whereby the defender or indemnitor may bring a declaratory action on its own behalf when there is no actual controversy involving the indemnitee. The indemnitor's standing in such case is derivative, not original and independent. Similarly, without direct infringement there can not be contributory infringement or inducement of infringement. Thus BP Chemicals' interest, either as an indemnitor or based on possible liability for contributory infringement or inducement to infringe, is no more definite than that of its licensees. Similarly, while BP Chemicals' interest as patent licensor may be adversely affected by Union Carbide's competitive activity, if the latter does not constitute a threat to sue BP Chemicals' potential licensees, then BP Chemicals can not bring a declaratory judgment action against Union Carbide.

*Id.* at 981, 28 USPQ2d at 1129 (citation omitted).

This passage does not have the effect that the defendants ascribe to it. Instead, the passage rejects the contention by BP Chemicals that the two-part test for justiciability should not apply when "a non-manufacturing licensor's business is undermined by threats directed to its actual or potential licensees." *Id.* at 980, 28 USPQ2d at 1129. We reaffirmed the two-prong test and announced that, to satisfy the first prong of the inquiry, the patentholder's activities must create a reasonable apprehension of suit on the part of either the licensor or licensee. This apprehension may not arise from the contractual relationship between the licensor and licensee alone; instead, it must arise from the patentholder's actions.

■ We appreciate that determining whether "the need for judicial attention is real and immediate" is more difficult when the actual controversy is alleged to emanate only from inducing infringement. *Id.* at 978, 28 USPQ2d at 1126. Determining whether concrete steps have been taken with the intent to conduct activity which could constitute infringement is generally a more demanding task when the activity involves inducing infringement instead of direct infringement, because the former involves the activities of at least two parties and the latter usually only those of one. Even so, we decline, as the defendants would have us, to create a per se rule that an actual controversy predicated only on inducing infringement may exist only if direct infringement has already occurred. Instead, we confirm that, even if only inducing infringement is at issue, "[w]hether a declaratory plaintiff's ability and definite intention to undertake a potentially infringing activity constitutes sufficient 'preparation' is a question of degree to be resolved on a case-by-case basis." *Arrowhead,* 846 F.2d at 736, 6 USPQ2d at 1689; *accord BP Chems.,* 4 F.3d at 977–78, 28 USPQ2d at 1126.

On remand, the district court may, should it choose, reconsider its earlier ruling on the second prong. We note that, even if the district court were to conclude that there was an actual controversy, exercising jurisdiction over the declaratory judgment action would fall to the district court's discretion, which is substantial. *See, e.g., Wilton v. Seven Falls*

*Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); *Serco Servs.,* 51 F.3d at 1039, 34 USPQ2d at 1218 ("But even if a case satisfies the actual controversy requirement, there is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances.").

## VI

In ruling that the defendants did not create a reasonable apprehension of suit on the part of FRSA, the district court erred. We accordingly reverse the dismissal of the case and remand the case for further proceedings.

## COSTS

No costs.

*REVERSED* and *REMANDED.*