**TAKEDA CHEMICAL INDUSTRIES, LTD. and Takeda Pharmaceuticals, North America, Inc., Plaintiffs,**

v.

**WATSON PHARMACEUTICALS, INC., Watson Pharma, Inc., and Danbury Pharmacal, Inc., Defendants.**

No. 03 Civ.8254(DLC).

United States District Court, S.D. New York.

June 9, 2004.

Anthony J. Viola, Edwards & Angell, LLP, New York City, David G. Conlin, Barbara L. Moore, Edwards & Angell, LLP, Boston, MA, for Plaintiffs.

Edward F. Maluf, Piper Rudnick LLP, New York City, Robert F. Green, Steven H. Sklar, Leydig, Voit & Mayer, Ltd., Chicago, IL, for Defendants.

## OPINION AND ORDER

COTE, District Judge.

This Opinion addresses the justiciability of a declaratory judgment claim that a generic drug applicant is preparing to induce the infringement of method of use patents. The method of use patents protect the use of the drug pioglitazone in combination with other drug therapies. The defendant is currently seeking approval from the FDA to market its generic pharmaceutical for use alone, or in what is called monotherapy. For the reasons described below, the declaratory judgment claim presents a sufficiently concrete controversy to be adjudicated, and motion to dismiss is denied.

Plaintiffs Takeda Chemical Industries, Ltd. and Takeda Pharmaceuticals North America, Inc. (collectively, "Takeda") bring this patent action pursuant to the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301–99, and the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585 (1984) (codified in scattered sections of titles 21, 35, and 42 U.S.C.) (the "Hatch–Waxman Act"), and under the patent laws of the United States, alleging that defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Watson Pharma, Inc., and Danbury Pharmacal, Inc. (collectively, "Watson") have infringed and will induce infringement of Takeda's patents protect-

ing its product Actos, a drug used to treat Type II diabetes. Watson now moves to dismiss the third through eleventh causes of action ("Claims III–XI") for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1), and for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

*Background*

All of the facts recited below are undisputed or taken from the complaint. To resolve this motion, it is also necessary to understand the federal statutory framework governing approval of new and generic drugs. This Opinion assumes familiarity with the description of that framework contained in *Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322, 1325–27 (Fed.Cir.2003) (per curiam) (affirming summary judgment). Only a brief summary of the procedures most relevant to this motion is included here.

## I. *The Hatch–Waxman Act: The Regulatory Framework*

In order to market a drug for a particular use, a manufacturer must obtain approval from the Food and Drug Administration ("FDA") through the submission of a new drug application ("NDA"), which must include extensive safety and efficacy information. 21 U.S.C. § 355(b). The NDA applicant must also file information about patents that have claims which cover the drug or that cover a method of using the drug. *Id.* The FDA lists patents that claim an approved or pending use of a new drug in the FDA publication known generally as the "Orange Book". *Id.* at § 355(j)(7)(A)(i). If the application for an NDA is approved, the manufacturer is

granted an automatic five-year period of exclusivity to market the drug. *Id.* at § 355(c)(3)(D)(ii). A separate, non-patent exclusivity period of five years is available if the drug is deemed a pioneering drug that qualifies as a new chemical entity ("NCE"). *See* 21 C.F.R. § 314.108(b)(II).

A manufacturer seeking approval of a generic version of an FDA-approved drug may file an Abbreviated New Drug Application ("ANDA") at the end of the fourth year of the NCE exclusivity period. 21 U.S.C. §§ 355(j)(2)(A), 355(j)(5)(D)(ii). The ANDA permits the generic manufacturer to avoid the costly and time-consuming safety and efficacy studies required of the brand name drug manufacturer so long as the generic drug is a bioequivalent of an FDA-approved drug. *See Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1357 (Fed.Cir.2003) (affirming summary judgment).

In its ANDA, the generic drug manufacturer must address all patents listed in the Orange Book that are related to the NDA-approved drug. It may do so through certifying one of the following:

(i) no patent information has been filed;

(ii) the approved drug's patent has expired;

(iii) the ANDA applicant does not seek final approval prior to the date the approved drug's patent will expire; or

(iv) the approved drug's patent " 'is invalid or will not be infringed by the manufacture, use, or sale' of the generic drug for which the ANDA is being submitted. (a 'Paragraph IV certification.')"

*Allergan*, 324 F.3d at 1326 (citing 21 U.S.C. 355(j)(2)(A)(vii)).[1] If the generic

---

1. If the applicant makes a Paragraph IV certification in its ANDA, it must notify the patent holder. 21 U.S.C. § 355(j)(2)(B)(i). Once an applicant gives notice, the FDA must wait forty-five days before approving the ANDA, thereby giving the patent holder time to file a

patent-infringement suit. *Id.* at § 355(j)(5)(B)(iii). If the patent holder sues, the FDA must wait thirty months from the notice date before approving the ANDA unless the applicant wins the lawsuit sooner or the

drug manufacturer files a Paragraph IV certification, it is immune from patent infringement suits so long as its infringing acts are related to compliance with the FDA's regulatory approval process. 35 U.S.C. § 271(e)(1). As a matter of law, however, the act of filing an ANDA is deemed an act of infringement if the purpose of such filing is to obtain approval to engage in the commercial manufacture, use, or sale of a drug that is claimed in a patent before the expiration of the patent. *Id.* at § 271(e)(2). Thus, a generic drug manufacturer is permitted to "file an ANDA before a patent expires and, in so doing, allege non-infringement and invalidity of the patent," while a brand name drug manufacturer is allowed to challenge the ANDA application in court. *Allergan,* 324 F.3d at 1326.

Paragraph IV certifications are not the only way for ANDA applicants to satisfy their obligation to address all relevant patents. If a method of using the approved drug is patented and is listed in the Orange Book, but the applicant is not seeking approval for the patented use— that is, it is not filing a Paragraph IV certification—the manufacturer must state in the ANDA that the method of use patent does not claim the use for which the manufacturer is seeking approval. 21 U.S.C. § 355(j)(2)(A)(viii) ("Section viii Statement").[2] In other words, by filing a Section viii Statement, an ANDA applicant indicates that a patent poses no bar to

approval of its ANDA because it seeks to market the drug for a use other than the one encompassed by the patent.[3] *See Warner–Lambert,* 316 F.3d at 1359–62.

## II. *Actos*

On July 15, 1999, the FDA approved Takeda's NDA for pioglitazone hydrochloride ("pioglitazone"), which is marketed under the brand name Actos. Recognizing Actos as a pioneering drug, the FDA granted five years of NCE exclusivity to Takeda. Takeda currently markets Actos for use as an adjunct to diet and exercise to improve glycemic control in patients with Type 2 diabetes.[4] Actos is approved by the FDA for use in monotherapy (i.e., administration alone and not in combination with another drug), as well in combination therapy where pioglitazone alone does not result in adequate glycemic control.

Takeda has acquired several patents relating to pioglitazone that claim, *inter alia,* the chemical compound pioglitazone, pharmaceutical compositions of pioglitazone in combination with other active ingredients, and methods of treating diabetes using pioglitazone in combination with other drugs. Eleven of these patents are listed in the Orange Book. None of the patents currently held by Takeda covers the use of pioglitazone in monotherapy.

U.S. Patent 4,687,777 (the " '777" patent) is directed to the pioglitazone molecule

court hearing the lawsuit shortens the thirty-month period. *Id.*

**2.** With respect to each listed patent, an ANDA-filer can submit either a Section viii Statement or a Paragraph IV certification, but not both. *See Purepac Pharm. Co. v. Thompson,* 354 F.3d 877, 880 (D.C.Cir.2004).

**3.** Paragraph IV certifications and Section viii Statements have quite different consequences. Applicants submitting Section viii Statements have no obligation to provide notice, nor must

the FDA wait thirty months to approve the application.

**4.** There are two different types of diabetes. Type 1 diabetes results from the body's failure to produce insulin. Type 2 diabetes results from the body's resistance to insulin because of an impaired insulin receptor function in its cells. In Type 2 diabetes, the body overproduces insulin to compensate for its insulin resistance.

itself. The remaining Orange Book patents relate to the administration of pioglitazone in combination therapy. U.S. Patent 5,965,584 (the "'584" patent) and U.S. Patent 6,329,404 (the "'404" patent) contain product claims covering pioglitazone in combination with other active ingredients, as well as methods of using pioglitazone in combination with a second agent. The remaining Orange Book patents include claims directed to methods of using pioglitazone in combination therapies. The method of use claims of the '584 patent and the '404 patent, and the remaining methods of use patents listed in the Orange Book are referred to as the "combination use patents." The '777 patent expires in 2011. The combination use patents expire in 2016.

### III. *Watson*

On July 15, 2003, at the end of pioglitazone's fourth year of NCE exclusivity, Watson filed an ANDA seeking approval to market a generic version of the Actos pioglitazone tablets for use in monotherapy. With respect to the '777 patent, Watson filed a Paragraph III certification stating that its product would not be made available until the expiration of the '777 patent in January 2011.[5] With respect to the remaining patents, Watson initially filed Paragraph IV certifications. Watson subsequently amended its certifications as to the combination use patents, replacing all but two of its Paragraph IV certifications with Section viii Statements.[6] Because its ANDA seeks FDA approval only for pioglitazone monotherapy, Watson's

Section viii Statements declare that it is not seeking approval for Takeda's patented uses of pioglitazone.

Watson's ANDA states that Takeda's combination use patents are method of use patents that "will not be included in our proposed labeling." In its proposed label for generic pioglitazone, Watson revises the reference to combination therapy that is contained in the Actos label. Among other things, Watson changes the direction in the Actos label that reads "[f]or patients not responding adequately to monotherapy, *combination therapy* should be considered" to "[f]or patients not responding adequately to monotherapy, *other therapy* should be considered." (Emphasis supplied.)

### IV. *The Lawsuit*

Takeda's complaint contains eleven claims. Claims I and II are pleaded under 35 U.S.C. § 271(e)(2)(A), and allege infringement and inducement of infringement by Watson of the portions of the '584 and '404 patents that claim pharmaceutical compositions of pioglitazone in combination with other active ingredients. Watson has filed Paragraph IV certifications for these two patents, and does not seek to dismiss those claims in this motion. Claims III–XI of Takeda's complaint allege that Watson's sale of pioglitazone will induce infringement of Takeda's combination use patents in violation of 35 U.S.C. § 271(b) ("Section 271(b)"), the provision of the gen-

---

**5.** Watson is not currently challenging the validity of the '777 patent. Unless the '777 patent is invalidated as a result of two related Southern District of New York actions between Takeda and Mylan Laboratories, 03 Civ. 8253, and/or Takeda and Alphapharm Ltd., 04 Civ.1966, Watson's ANDA cannot receive final approval by the FDA until the expiration of the '777 patent in 2011. In its

ANDA, however, Watson expressly reserves the right to begin marketing generic pioglitazone immediately should the '777 patent be declared invalid.

**6.** Watson retained its Paragraph IV certifications for the composition claims in the '584 and '404 patents.

eral patent statute barring inducement of infringement.

In Claims III–XI, Takeda asserts that Watson is aware or should be aware of the widespread use of pioglitazone in combination therapy, and thus, knows or should know that its customers, including physicians, pharmacists, and health care providers, will use pioglitazone in combination therapy to treat patients with Type 2 diabetes. According to Takeda, Watson knowingly and actively intends to induce its customers to use pioglitazone in combination therapy, thereby inducing them to infringe the combination use patents.

Takeda seeks a judgment that Watson's manufacture, sale or use of pioglitazone will infringe at least one of Takeda's patents, and that inducing such manufacture, sale, or use will infringe at least one of its patents. It also seeks a judgment that the effective date for any FDA approval of Watson's sale of a product containing pioglitazone be no earlier than the expiration of the '584 or '404 patent, whichever is later. Finally, Takeda seeks a permanent injunction restraining Watson from any infringement or inducement of infringement through the manufacture or sale of pioglitazone.

### Discussion

Watson argues that nine of Takeda's eleven causes of action must be dismissed because (1) there is no subject matter jurisdiction over these claims, and (2) they fail to state a claim. For the sake of clarity, Watson's motion to dismiss based on an alleged failure to state a claim is addressed first.

### 1. *Failure to State a Claim* [7]

When considering a motion to dismiss, a court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 68 (2d Cir. 2000); *Jaghory v. New York State Department of Education*, 131 F.3d 326, 329 (2d Cir.1997). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004); *Securities Investor Protection Corp.*, 222 F.3d at 68. Takeda's claims are governed by the pleading standard set forth in Rule 8(a), Fed.R.Civ.P. Under Rule 8(a), a complaint adequately states a claim when it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing Rule 8(a)(2), Fed. R. Civ. P). Thus, under Rule 8(a)'s liberal pleading standard, a complaint is sufficient if it gives "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (citation omitted). *See also Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir.2002).

The nine claims at issue on this motion are claims for inducement of infringement brought under Section 271(b), which provides, "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). In order to succeed on a claim of inducement, "a plaintiff must prove that the defendants' actions induced infringing acts and that they knew or should have known their actions would induce actual infringement."

**7.** The Federal Circuit applies the law of the regional circuit to procedural questions that are not particular to patent law. *See Madey v. Duke University*, 307 F.3d 1351, 1358 (Fed. Cir.2002). Accordingly, Second Circuit law governs the legal standards for dismissal under Rules 12(b)(1) and (b)(6).

*Warner–Lambert,* 316 F.3d 1348, 1363 (citation omitted). Mere knowledge of the allegedly infringing acts is not sufficient to show inducement; there must be proof of actual intent to cause the infringing activity. *Id.* Such proof may be in the form of direct or circumstantial evidence. *Id.*

■ The nine claims Watson seeks to dismiss are virtually identical, except that each lists a different Takeda patent. They address both future and past activity. Each asserts that Watson *will* be marketing pioglitazone with specific intent and/or with the desire to actively induce infringement of a Takeda patent, and that the acts described in the complaint "are and *have been* deliberate and willful." (Emphasis supplied.) Each asks for an injunction against "inducing the infringement" of its patents.

Takeda asserts that its nine claims request a declaration that Watson's use or sale of pioglitazone will induce infringement of Takeda's patents. Although there is no explicit request for a declaratory judgment, Takeda's prayer for relief could be read as requesting one. It seeks, for instance, a judgment that Watson's acts of inducing the use of pioglitazone will infringe Takeda's patents. Takeda will be permitted to amend its complaint to make its request for a declaratory judgment explicit.[8]

■ Applying Rule 8's minimal pleading standard to Takeda's nine claims, they allege the existence of patents and a claim that Watson has taken and will take acts to induce infringement of those patents. This is sufficient to state a claim. Watson contends that there is no cause of action for a Section 271(b) claim where the ANDA filer does not seek approval for a

patented use. A distributor of a drug may be liable for inducing infringement of a patent even though it has not acknowledged to the FDA that it intends to encourage the use of its product in a manner that would conflict with a patent. The Rule 12(b)(6) inquiry is limited to an analysis of whether the plaintiff has stated a claim, which Takeda has successfully done.

### 2. *Justiciability*

■ Watson moves to dismiss the nine claims on the ground that this Court lacks subject matter jurisdiction because no case or controversy exists. To determine jurisdiction in federal question cases, the court need only ask "whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution. If so, [the court should] assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1189 (2d Cir.1996). The standard is a "modest" one, allowing for subject matter jurisdiction so long as the complaint "states a colorable federal claim." *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 233 (2d Cir.1999) (per curiam) (citation omitted).

■ In assessing a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *APWU v. Potter,* 343 F.3d 619, 623

8. Takeda's second request for relief may contain an error. It seeks a judgment that "inducing" the sale of pioglitazone, "and/or inducing the same," will infringe one of its patents.

(2d Cir.2003) (citation omitted). Courts evaluating Rule 12(b)(1) motions "may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 161 n. 30 (2d Cir.2003) (citation omitted). Where jurisdiction is "so intertwined with the merits that its resolution depends on the resolution of the merits," the court should use the standard "applicable to a motion for summary judgment" and dismiss only where "no triable issues of fact" exist. *London v. Polishook*, 189 F.3d 196, 198–99 (2d Cir.1999) (citation omitted).

 Inducement actions brought under Section 271(b) may anticipate future infringing conduct so long as there is a controversy of "sufficient immediacy and reality." *Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761, 765 (Fed. Cir.1990) (declaratory judgment action). To meet the requirement that there be a controversy of sufficient immediacy, a patentee seeking a declaratory judgment against an alleged future infringer must demonstrate that two elements are present: "(1) the defendant must be engaged in an activity directed toward an infringement charge, or be making meaningful preparation for such activity"; and (2) the defendant's acts "must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming."[9] *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1571 (Fed.Cir. 1997) (citing *Lang*, 895 F.2d at 764).

 There is no *per se* rule in the context of a Section 271(b) claim that "direct infringement [have] already oc-

curred." *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1485 (Fed.Cir.1998). "A claim of induced infringement ... filed prior ·to the occurrence of direct infringement, does not violate the case or controversy requirement of Article III." *Allergan*, 324 F.3d at 1332. What is necessary is that concrete steps have been taken "with the intent to conduct activity" that would induce infringement. *Fina*, 141 F.3d at 1485. Resolving the issue of whether a defendant's "ability and definite intention to undertake a potentially infringing activity constitutes sufficient preparation" is a fact intensive, case by case, inquiry. *Id.* The Federal Circuit recently declared that a method of use patent holder could potentially bring an action against a generic drug manufacturer for induced infringement on the very day an ANDA was approved and "before a single prescription of the generic drug was written." *Allergan*, 324 F.3d at 1332.

 Takeda has shown that a controversy of sufficient immediacy exists between it and Watson. Watson's actions in developing a generic version of Actos, and applying for FDA approval, show that it has taken significant steps towards manufacturing and testing its generic pioglitazone products. It has designed a label which it hopes will succeed in defeating any claim of infringement.

Watson argues that, since it is not challenging the validity of the '777 patent, the earliest it could market its generic pioglitazone is 2011, making Takeda's lawsuit "speculative" and not ready for adjudication. Watson's argument is disingenuous. Watson has reserved the right to market generic pioglitazone as soon as it receives

---

9. The reasonable apprehension test in the second element is judged objectively, and an "express threat of litigation" is not required. *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1254 (Fed.Cir.2002) (citation omitted) (declaratory judgment action). This element is important for those actions in which the putative infringer files a declaratory judgment action to clear the path for sale of its products.

FDA approval. It concedes that, "[i]f the '777 patent directed to the pioglitazone molecule were to be held invalid by this Court in a challenge by another generic manufacturer, Watson reserves the right to seek final approval of its ANDA before 2011." Watson is well aware that the '777 patent is being challenged by two other generic manufacturers in related actions before this Court. If either succeeds in challenging the '777 patent, Watson will be permitted to begin marketing pioglitazone almost immediately.

In *Glaxo,* in the context of a claim for infringement pursuant to 35 U.S.C. § 271(e)(2)(A), the Federal Circuit found that a sufficiently concrete controversy existed to support a declaratory judgment action as of the date the defendant filed its ANDA, even though it was undisputed that the defendant would not be able to import and sell its drug until the expiration of a particular patent, which would not occur until many months following the filing of the lawsuit. *Glaxo,* 110 F.3d at 1571. Jurisdiction existed because the defendant "was systematically attempting to meet the applicable regulatory requirements while preparing to import its product." *Id.* Here, Watson has filed a Section viii Statement so that it can be in a position to market pioglitazone as soon as its ANDA is approved and the '777 patent is invalidated. Whether it has also taken sufficient action to show a definite intention to induce infringement can only be determined through discovery.

Watson's relies on *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022 (Fed.Cir.2002), and *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684 (Fed.Cir.1986), for the proposition that a cause of action under Section 271(b) cannot lie without a direct infringement of Takeda's patents. In the course of reversing a grant of summary judgment, the *Epcon*

court observed that there can be "no inducement of infringement without direct infringement by some party." *Epcon,* 279 F.3d at 1033. This observation was apparently made in the context of a claim for damages, rather than in a declaratory judgment action. For similar reasons, the nearly identical observation of the *Met–Coil* court is inapposite to this declaratory judgment action. *See Met–Coil,* 803 F.2d at 687.

At its heart, Watson's argument is that allowing a declaratory judgment action on a Section 271(b) claim undermines the structure of the Hatch–Waxman Act. Under Hatch–Waxman, a defendant's inclusion of a Section viii Statement for method of use patents is not deemed an act of infringement. In contrast, the defendant's filing of a Paragraph IV certification is deemed an act of infringement and a plaintiff may immediately file suit even though a defendant's ANDA has not yet been approved and any infringing sale may never be made or may be made years in the future. The short answer is that the Hatch–Waxman Act did not revise or replace Section 271(b). If a Section 271(b) claim meets the traditional standards imposed under Rules 12(b)(1) and (b)(6), and is justiciable, then it may be brought even if it is premised on a Section viii Statement and there is no ongoing act of infringement.

In sum, Takeda alleges a controversy of sufficient immediacy and reality against Watson in Claims III–XI such that the invocation of the Declaratory Judgment Act is proper. At least at this preliminary stage, Takeda adequately asserts a claim against Watson for the inducement of infringement of its combination use patents. Accordingly, Watson's motion to dismiss those claims for failure to satisfy Article III's case or controversy requirement, and for failure to state a claim, must be denied.

*Conclusion*

Watson's motion to dismiss Claims III–XI of the complaint is denied.

SO ORDERED.